UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
KAWAN FOOD MANUFACTURING SDN BHD,
and KG PASTRY MARKETING SDN BHD,

                Plaintiffs,

      -against-                          06-CV-5430 (ERK) (RER)

BENGAL SEAFOOD USA CANADA INC.,
BHAVANI FRUITS & VEGETABLES, INC.,
JAI BHAVANI, INC., and
GREEN-LAKE PRODUCE AND SEAFOOD
CORPORATION,
                Defendants.
------------------------------------------------------------- x

## REPORT & RECOMMENDATION

**RAMON E. REYES, JR., U.S.M.J.:**

Before the Court is plaintiffs' motion for entry of an order pursuant to Rule 7 of the Federal Rules of Civil Procedure enforcing an "on the record" settlement reached at the conclusion of a preliminary injunction hearing on November 9, 2006. For the reasons which follow, I respectfully recommend that plaintiffs' motion be granted, and that the Final Order and Permanent Injunction attached hereto be entered.

## FACTS[1]

Plaintiffs Kawan Food Manufacturing Sdn Bdh and KG Pastry Marketing Sdn Bdh (collectively, "Kawan"), are leading food manufacturers and sister companies that produce, package, and sell Asian foods in the United States and worldwide markets. Declaration of Vagn Fausing ("Fausing Decl."), dated October 20, 2006, ¶ 2; Transcript of Preliminary Injunction

---

[1] The facts contained herein are taken from the parties' submissions in connection with the November 9, 2006 preliminary injunction hearing, the testimony at the hearing, and the parties' submissions in connection with the instant motion to enforce the settlement.

Hearing ("11/9/06 H.") at 13-15.  Relevant to this action, Kawan produces a line of frozen bread products, *e.g.*, paratha, roti, puri, chapatti, aloo, etc., bearing the distinctive two-leaf Kawan logo and trade dress.  Fausing Decl. at ¶¶ 10-11; 11/9/06 H. at 13-17.  Kawan owns a United States trademark registration for its logo and composite mark.  Fausing Decl. at ¶ 12, Ex. 1; 11/9/06 H. at 17 (referring to U.S. Trademark Registration No. 3,127,305).  In 2005, the retail sales of Kawan food products in the United States were approximately $4.5 million, and more than $30 million worldwide.  11/9/06 H. at 23.  Kawan claims this line of products are manufactured according to the strict Halal requirements of the Islamic Development Corporation of Malaysia, and are superior to the products produced by its competitors.  Fausing Decl. at ¶¶ 7-9; 11/9/06 H. at 17-20.

Defendant Bengal Sea Foods USA Canada, Inc. ("Bengal"), which is owned and operated by Yakub Sheikh, is an importer and wholesale distributor of ethnic food products.  Declaration of Yakub Sheikh in Opposition to Plaintiffs' Order to Show Cause ("Sheikh Decl."), dated October 29, 2006, ¶ 2.  Defendants Green Lake Produce and Seafood Corporation ("Green Lake"), Bhavani Fruits & Vegetable, Inc. and Jai Bhavani, Inc. (collectively, "Bhavani"), are retail distributors of ethnic food products in the New York, New Jersey area.  Declaration of Henry Uy in Opposition to Plaintiffs' Order to Show Cause ("Uy Decl."), dated October 30, 2006, ¶ 3; Declaration of Mukund Patel in Opposition to Plaintiffs' Order to Show Cause ("Patel Decl."), ¶ 3.  From about 2000 to September 2005, Bengal was an authorized importer and distributor of Kawan products.  Fausing Decl. at ¶ 19.[2]

---

[2] Due to a falling-out between Sheikh and Kawan's principals, the authorized relationship ended around September 2005.

In about mid-May 2006, Kawan learned that Bengal was importing into and distributing in the United States a line of frozen bread products manufactured in Bangladesh, and bearing the mark "Kowlun." Fausing Decl. at ¶ 16; 11/9/06 H. at 26. The Kowlun products were sold in packaging that is very similar to the Kawan products. The Kowlun products were being sold to the public at Green Lake's and Bhavani's stores in New York and New Jersey. Fausing Decl. at ¶ 16; 11/9/06 H. at 27. Believing these products to be infringing of Kawan's registered marks, Kawan asked defendants to cease and desist sales of the Kowlun products in the United States. Fausing Decl. at ¶¶ 21-23. In mid-June, Bengal acknowledged that it had about 6000 cases of Kowlun product on hand. *Id*. at ¶ 21. Bhavani acknowledge that it was distributing Kowlun products, but claimed to do so only on a "small scale." *Id.* Green Lake denied ever having distributed Kowlun products. *Id.* Subsequently, Kawan continued to find Kowlun products on sale at Bhavani's stores, and not being able to secure defendants' compliance with the cease and desist request, initiated this lawsuit*. Id*. at ¶ 23.

On November 9, 2006, this Court held a preliminary injunction hearing.[3] At the hearing, Messrs. Fausing, Sheikh, Patel and Uy testified. Significantly, defendants admitted to selling Kowlun products, alternatively arguing that the Kowlun products did not infringe Kawan's marks, or that Kawan acquiesced in the defendants' sales of Kowlun products. After a couple of hours of testimony, I suggested that the parties try to settle the matter. The parties consented to the Court's assistance in settlement efforts, and after some time a settlement was reached. As I noted on the record:

---

[3] The hearing had been referred to me by Chief Judge Korman.

> After several discussions from what I understand, the parties have reached an agreement to settle the entire matter. And please correct me if I am wrong, but the terms of the agreement are that the defendants will agree to a permanent injunction preventing them from distributing or selling the [Kawan] marked items, as well as the Kowlun marked items or any items in a substantially similar package. The language of the injunction is to be worked out after the hearing is over and will be entered into a signed settlement agreement or whatever other document the parties want to agree to.
>
> In addition, the defendants will be permitted to sell the existing stocks of [Kowlun] products and they must do so within six months . . ..
>
> In addition, the defendants will pay to the plaintiff $10,000 within seven days towards attorneys fees.

11/9/06 H. at 87-88. Shortly thereafter I noted for the record that:

> [the parties] are going to work out the written language of the injunction. But in essence, you're going to stop selling [Kowlun], you're going to stop selling [Kawan] and you're not going to sell any [parathas] or any products in packaging that is substantially similar to Plaintiffs' Exhibit 22 and Plaintiffs' Exhibit 23, these items right here.

*Id.* at 89-90. I asked each of the defendants whether they understood and agreed to the terms of the settlement as I reiterated them. Each defendant responded "yes." *Id.* at 92:1 (Mr. Sheikh, "Yes, I said we agree with that . . ."), at 92:19-23 (Mr. Uy, "Yes"), 92:25-93:4 (Mr. Patel, "Yes."). The preliminary injunction hearing was therefore adjourned.

Following the November 9, 2006 preliminary injunction hearing, Kawan's counsel drafted and sent to defendants' counsel a Settlement Agreement and Final Judgment and Permanent Injunction on Consent in accordance with the settlement reached by the parties at the hearing. Affidavit of Marsha G. Gentner ("Gentner Aff."), dated January 10, 2007, ¶ 2.

4

Thereafter, the parties continued to negotiate the terms of the written settlement agreement, including renegotiation of at least one issue that had previously been agreed to – the period during which defendants would be permitted to sell their existing stocks of Kowlun products (the "sell-off provision"), and the negotiation of two new terms – a reporting requirement during the sell-off period and whether the sell-off provision would apply to newly identified stocks of puri bearing the Kowlun mark and packaging. *Id*. at ¶¶ 3-8.

By December 12, 2006, the parties reached agreement on the terms of the written settlement agreement, including the period for the sell-off, the reporting requirement, and whether the sell-off applied to puri products bearing the Kowlun mark. *Id*. at ¶ 9. On that date, counsel for Bengal confirmed by telephone "unequivocally that the defendants would sign the Settlement Agreement and Permanent Injunction as forwarded to him on November 27, 2006, revised only to include" the items listed immediately above. *Id.* Kawan's counsel promptly revised the written settlement agreement, sent them to defendants' counsel, and on December 14, 2006, Bengal's counsel responded that he "would have them executed ASAP." *Id.* at ¶¶ 10-11.

From December 14, 2006 to January 5, 2007, on several occasions counsel for Bengal, and Green Lake and Bhavani each indicated that their clients had agreed to the terms of and were in the process of executing the written settlement agreement:

- On December 14, 2006, Bengal's counsel sent an email to Kawan's counsel indicating that he "would have the [settlement agreement] executed ASAP." *Id.* at ¶ 11.

- On December 18, 2006, Bengal's counsel sent an email to Kawan's counsel stating that he would follow up with his client "to see the status of the execution and the check." *Id.* at ¶ 12.

5

- By email dated December 27, 2006, Bengal's counsel stated that, "I am still waiting for the papers from my client. I have [counsel for Green Lake and Bhavani]'s permission to get the signatures from his client, I am only waiting on Bengal." *Id.* at ¶ 14.

- By email dated January 2, 2007, counsel for Green Lake and Bhavani confirmed that he had given counsel for Bengal "permission to obtain the signatures from my clients and forwarded them the documentation." *Id.*

- During a telephone conversation on January 3, 2007, counsel for Green Lake and Bhavani "once again acknowledged the parties' agreement and indicated he would try and reach [counsel for Bengal] to move the matter along." *Id.* at ¶ 15.

- On January 5, 2007, counsel for Green Lake and Bhavani informed Kawan's counsel by telephone that "Bhavani was executing the documents and would fax them to him on Monday, and that Greenlake already had executed the documents and they would be faxed to him either that day (Friday) or the following Monday." *Id.*

On January 5, 2007, for the first time, Bengal's counsel informed Kawan's counsel that Bengal had "several issues" with the written settlement agreement and would not sign it. *Id.* at ¶ 16. According to Kawan, Bengal's counsel "stated that until only days before, it was his understanding that the settlement documents were going to be executed by his client. [Counsel] stated that Mr. Sheikh apparently had changed his mind about the terms of settlement he had agreed to in court." *Id.* Green Lake's and Bhavani's counsel confirmed that his clients would not forward the executed settlement documents as well. *Id.* at ¶ 17. Plaintiffs then filed the instant motion to enforce the November 9, 2006 settlement.[4]

---

[4] Plaintiffs' motion was brought on by an order to show cause on January 11, 2006, before District Judge John Gleeson, the miscellaneous judge at the time. Judge Gleeson referred the application to me in the first instance. On that same date I signed the order to show cause, and directed the parties to appear for a hearing on January 19, 2006, and show cause why a report and recommendation should not be issued recommending that an order be issued pursuant to Rule 7 of the Federal Rules of Civil Procedure enforcing the settlement reached on the record at the November 9, 2006 preliminary injunction hearing. The hearing was later rescheduled to January 18, 2007.

At the January 18, 2006 hearing on the instant motion, it became clear just why the negotiation of the written settlement agreement broke down. Although defendants counsel admitted that defendants had agreed to the settlement terms discussed at the November 9, 2006 hearing, Transcript of 1/18/07 Hearing ("1/18/07 H.") at 19-22,[5] he argued that defendants refused to sign a written agreement because of two issues that had not been specifically addressed at the hearing: (1) whether the injunction against selling any Kowlun or Kawan products, or *any products in substantially similar packaging*, applied to the copyrighted information on the backs of such packaging; and (2) whether defendants had to report to plaintiffs on their efforts to sell-off their stocks of Kowlun products during the six-month period, *id.* at 19:17-24, 23:1-25, 27:8-18.

### DISCUSSION

A.  The Law

It is settled law that a "settlement is a contract, and once entered into is binding and conclusive." *Janneh v. GAP Corp.*, 887 F.2d 432, 435-36 (2d Cir. 1989), *cert. denied*, 498 U.S. 865 (1990). As such, a "district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy* Corp., 490 F.2d 714, 717 (2d Cir. 1974) (citations omitted); *accord Vari-O-Matic Machine Corp. v. New York Sewing Machine Attachment Corp.*, 629 F. Supp. 257, 258 (S.D.N.Y. 1986). "A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the

---

[5] For example, counsel stated that defendants' "position has been since November 9 and still remains today that the three main ingredients of the settlement agreement discussed in court are perfectly fine by us." 1/18/07 H. at 20:10-12.

course of a trial or other significant courtroom proceedings." *Meetings & Expositions, Inc.*, 490 F.2d at 717. Indeed, courts have recognized that:

> [a] stipulation of settlement on the record in Court is one of the strongest and most binding agreements in the field of the law. Stipulations of settlement are favored by the courts and not lightly cast aside. This is all the more so in the case of open court stipulations . . . where strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and integrity of the litigation process. As an oral stipulation in open court can effect dismissal, it is clear that the parties are bound to the terms of their agreement made on the record. An agreement made on the record, in open court, and under the eyes of the Court, is a most solemn undertaking requiring the lawyers and the parties to make every reasonable effort to carry out all the terms to a successful conclusion.

*In re Cuffee*, 232 B.R. 53, 56 (E.D.N.Y. 1999) (Spatt, J.) (internal quotations and citations omitted); *accord Janus Films, Inc. v. Miller*, 801 F.2d 578, 583-86 (2d Cir. 1986).

Courts in this Circuit and others routinely enforce settlements reached in open court notwithstanding a litigant's subsequent refusal to sign a written agreement. *E.g., United States v. Sforza*, 326 F.3d 107, 116 (2d Cir. 2003) (affirming district court's entry of final judgment following parties' on the record settlement, and despite one party's refusal to sign written settlement agreement); *Janus Films*, 801 F.2d at 583 (affirming with slight modification district court's entry of judgment following parties' on the record settlement); *Manning v. New York University*, No. 98 Civ. 330 (NRB), 2001 WL 963982, at *16 (S.D.N.Y. Aug. 22, 2001) (plaintiff ordered to sign written agreement consistent with settlement to which he agreed on the record), *aff'd*, 299 F.3d 156 (2d. Cir. 2002); *Monaghan v. SZS 33 Associates, L.P.*, 875 F. Supp. 1037, 1042 (S.D.N.Y. 1995) (settlement agreement reached in open court enforced under New York and federal law); *Reich v. Best Built Homes, Inc.*, 895 F. Supp. 47, 49 (W.D.N.Y. 1995) (same

under federal law); *Vari-O-Matic*, 629 F. Supp. at 259 (same under federal law); *Shafarman v. Ryder Truck Rental, Inc.*, No. 83 Civ. 3000 (SWK), 1984 WL 904, at *4 (S.D.N.Y. Sept. 24,1984); *see also Doi v. Halekulani Corporation*, 276 F.3d 1131, 1140 (9th Cir. 2002) (same under Hawaii law); *Wilson v. Wilson*, 46 F.3d 660, 664-67 (4th Cir. 1995) (same under Illinois law); *Scarborough v. Long*, 112 F. Supp. 2d 609, 620 (S.D. Miss. 2000) (same under Mississippi and federal law); *Hyde Park Union Church v. Curry*, 942 F. Supp. 360, 363 (N.D. Ill. 1996) (same under Illinois and federal law); *Simulate, Inc. v. Clark-O'Neill, Inc.*, No. 96-CV-3660, 1996 WL 706598, at *2-3 (E.D. Pa. Dec. 2, 1996) (same under Pennsylvania and federal law); *F.D.I.C. v. Bathgate*, No. 91-2779, 1993 WL 661961, at *3 (D.N.J. July 19,1993) (same under New Jersey and federal law).

That the parties and the court intend that a settlement be memorialized in a written agreement embodying the terms set forth orally on the record does not render the settlement unenforceable if it is not followed-up by a written agreement. To the contrary, it is well established that parties are bound by on the record settlements even though they intend to, but ultimately do not, reduce the settlement to writing. *E.g., Best Built Homes, Inc.*, 895 F. Supp. at 50 (that parties intended to, but did not, execute a written consent judgment "embodying the terms set forth orally on the record . . . does not negate the enforceability of the settlement") (citing *International Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 56 (2d Cir. 1979)); *Vari-O-Matic*, 629 F. Supp. at 259 ("[f]ailure to complete the formal stipulation papers does not mean that a settlement was not in fact reached."); Restatement (Second) of Contracts § 26 (Tent. Draft No. 1,1964); 1 Corbin on Contracts § 30 (1950); 1 Williston on Contracts § 28 (3d ed. 1957).

The Second Circuit has set forth a four factor test for determining under New York law whether parties intend to be bound by a settlement absent a final writing. *See Winston v. Mediafare Entertainment Corp.,* 717 F.2d 78 (2d Cir. 1985). Those factors are whether: (1) there has been an express reservation of the right not to be bound in the absence of a writing; (2) there has been partial performance of the settlement; (3) all of the terms of the alleged settlement have been agreed upon; and (4) the agreement at issue is the type of contract that is usually committed to writing. *Id.* at 80; *see also Ciaramella*, 131 F.3d at 323. Although no single factor is decisive, each provides guidance. *See R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75 (2d Cir. 1984). The intention of the parties is a question of fact to be determined by an examination of the totality of the circumstances. *E.g., Int'l Telemeter Corp.*, 592 F.2d at 56.

B.     Analysis

The record clearly shows that on November 9, 2006 the defendants agreed on the record to: (1) a permanent injunction; (2) sell off their stocks of Kowlun products within six months; and, (3) pay to plaintiffs $10,000 for attorneys' fees. Defendants' belated attempt to walk away from the settlement by arguing that they never came to an agreement in the first place, or that they never intended to be bound absent a written agreement, is untenable. Memorandum in Opposition to Plaintiffs' Order to Show Cause Seeking to Enforce Settlement Agreement ("Defs' Br.") at 6-10. Defendants agreed to the above-mentioned terms on the record; their consent was not hesitant or equivocal, nor dependent upon any other conditions. The fact that defendants agreed to the settlement is made abundantly clear by defendants' counsel's statements following the hearing. Not only did defendants' counsel reiterate on several occasions from December to January that their clients were in the process of executing the written agreement, but after

defendants reneged on the deal, Bengal's counsel "stated that Mr. Sheikh apparently had changed his mind about the terms of settlement *he had agreed to in court*." Gentner Aff. at ¶ 16 (emphasis added). Moreover, at oral argument on the instant motion, Bengal's counsel admitted that agreement to the terms recited above had been reached on the record on November 9, 2006. 1/18/07 H. at 19-22. There is simply no indication in the record of any uncertainty on defendants' part, or that the settlement was contingent on any other event, or the negotiation of any other terms. The deal was done as of November 9, 2006.

Further, the *Winston* factors clearly support the enforceability of the parties' November 9, 2006 oral agreement even absent the execution of a written agreement. First, the record of the November 9, 2006 hearing reveals that defendants never expressly reserved the right not to be bound absent a written settlement agreement. Instead, they announced in open court that the terms I reiterated were acceptable, and they agreed to them. There simply was no express reservation of the right not to be bound.[6]

Second, there was partial performance of the settlement. Despite being informed that defendants possessed more Kowlun products than they initially admitted, plaintiffs permitted

---

[6] Defendants' argument that the parties intended not to be bound by the terms of the November 9, 2006 settlement because the *subsequent* written settlement agreement provided that execution thereof would "trigger[] entry of the injunction, payment, and release of the parties' claims," even if true, is misplaced. Defs' Br. at 7; *see also* Reply in Support of Plaintiffs' Motion to Enforce Settlement ("Pls' Reply"), at 2-3 (wherein plaintiffs dispute that the settlement was contingent upon execution of a written agreement). The intention to be bound by the terms of an on the record settlement must be determined at the time the agreement is reached on the record, not some time thereafter. Otherwise, a party could always walk away from an otherwise enforceable in-court settlement by simply inserting language into the subsequent draft written agreements to contradict what they agreed to on the record. Equally unconvincing is defendants' argument that the parties did not intend to be bound absent a written agreement because plaintiffs requested that the Court not enter an order of dismissal until after the parties submitted the written agreement. Defs' Br. at 8; Pls' Reply at 3.

11

defendants to continue to sell-off that product without running to court to obtain a preliminary injunction. In other words, plaintiffs continued to live by their side of the bargain and expressed a willingness to sign a written agreement, even if defendants did not.[7]

Third, all of the material terms of the settlement had been agreed upon. While defendants suggest after-the-fact that the issue of the copyright in the back of the packaging was never addressed, let alone agreed upon as part of the injunction, they are mistaken.[8] This is an action for, *inter alia*, trademark *and* copyright infringement. Complaint, ¶¶ 1, 71-83. Plaintiffs have all along claimed valid copyrights in the Kawan packaging, *id.* at ¶¶ 72-74, and that defendants have knowingly infringed their copyrights, *id.* at ¶¶ 75-80. Moreover, at the November 9, 2006 conference, defendants agreed to entry of a permanent injunction preventing them from selling Kowlun or Kawan products, or "any products in packaging that is *substantially similar* to Plaintiffs' Exhibit 22 and Plaintiffs' Exhibit 23, these items right here." 11/9/06 H. at 90 (emphasis added).[9] When that was said, the Court held up both the Kawan and Kowlun packages, and never once limited the injunction to just the front of each pagkage. Thus, the agreed upon injunction clearly contemplated a prohibition on the marketing or sales of products bearing substantially similar backs to the prohibited products.

---

[7] Thus, defendants' argument that "plaintiffs have not performed *any* of their obligations set forth under the Agreement, partially or otherwise," Defs' Br. at 8 (emphasis added), is misplaced.

[8] As for the reporting requirement, whether or not it is a material term, defendants are correct that the term was never discussed, let alone agreed upon at the November 9, 2006. However, because plaintiffs do not seek to impose a reporting requirement in their proposed final order and permanent injunction, the issue is moot.

[9] Plaintiffs' Exhibits 22 and 23 are the Kawan and Kowlun packages at issue.

In any event, even if the precise terms of the injunction were not entirely clear to defendants at the time, that should not prevent the settlement from being enforced. Numerous courts, including the Second Circuit, have held that the failure to fully define the precise confines of an on the record settlement does not render the settlement unenforceable. *See Manning*, 299 F.3d at 163-164; *Janus*, 801 F.2d at 585-86; *see also Sheng v. Starkey Labs, Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997) (upholding settlement agreement under Minnesota law despite failure to define, among other things, release of liability); *Wilson*, 46 F.3d at 667 (under Illinois law rejecting contention that on the record settlement was unenforceable because parties never agreed on wording of releases); *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985) (affirming enforcement of settlement of "all claims" despite discrimination plaintiffs claim that he did not knowingly release his wrongful termination claim).

For example, in *Janus Films, Inc. v. Miller*, the Second Circuit affirmed the district court's entry of final judgment in a copyright infringement action following the parties' agreement on the record to settle the matter for, *inter alia*, payment of $100,000 and a permanent injunction. 801 F.2d at 583. Although the terms of the permanent injunction were not discussed on the record, the Second Circuit held that the agreement "empowered the District Court to enter judgment, implementing but not expanding upon the parties' settlement agreement." *Id.* In so doing, the Court noted that the district court:

> correctly determined that no basis had been shown for refusing to enforce the settlement by entry of judgment. Plainly [defendant] could not walk away from the settlement simply because he changed his mind. He had heard its terms set forth by counsel for [plaintiff] in open court and had acknowledged his understanding of and agreement to the settlement when questioned under oath by Judge Ward.

13

*Id.* In particular, the Second Circuit emphasized that:

> [t]he settlement agreement called generally for a permanent injunction, without further elaboration. This agreement permitted the District Court to enter an injunction containing language necessary to effectuate the agreement. Once [defendant] conceded liability for infringement and accepted issuance of an injunction, the District Court was clearly entitled to enjoin him from distributing the infringing films or otherwise infringing plaintiffs exclusive rights. . ..

*Id.* at 585-86; *see also Manning*, 299 F.3d at 163-64 (held that the district court was well within its discretion to issue final order which detailed terms of the relief and the wording of the judgment to which parties had generally agreed on the record). Thus, the Court would be well within its discretion in fashioning the wording of the final judgment, as long as it is consistent with what the parties agreed to on the record. *See generally Janus Films,* 801 F.2d at 583 ("Due regard for the proper use of judicial resources requires that a trial judge proceed with entry of a settlement judgment after affording the parties an opportunity to be heard as to the precise content and wording of the judgment . . .."). Here, there should be no question that the agreed upon injunction applied to the copyrighted material on the back of the Kawan and Kowlun packaging, especially since a copyright claim is asserted in the complaint, the Court held up both the Kawan and Kowlun packages when discussing the injunction, and the injunction prohibited defendants from using any "substantially similar" packaging in the future.

Fourth, as the Second Circuit has noted on several occasions,"[s]ettlements of any claim are generally required to be in writing or, *at a minimum, made on the record in open court,"* *Ciaramella*, 131 F.3d at 326 (emphasis added), as was done here. *See also Winston, 111* F.2d at 83.

14

Thus, in light of the *Winston* factors, all of the objective evidence indicates that the parties intended to be bound by the terms of the November 9, 2006 settlement, even though the settlement was never committed to writing.  *See, e.g., Int'l Telemeter Corp.*, 592 F.2d at 56.

CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs' motion to enforce the parties' November 9, 2006 settlement be granted.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Chambers of the Honorable Edward R. Korman within ten days of receipt hereof.  Failure to file timely objections may waive the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: January 26, 2007**
**Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
KAWAN FOOD MANUFACTURING SDN BHD,
and KG PASTRY MARKETING SDN BHD,   06-CV-5430 (ERK) (RER)

                Plaintiffs,

        -against-   **FINAL ORDER AND PERMANENT INJUNCTION**

BENGAL SEAFOOD USA CANADA INC.,
BHAVANI FRUITS & VEGETABLES, INC.,
JAI BHAVANI, INC., and
GREEN-LAKE PRODUCE AND SEAFOOD
CORPORATION,

              Defendants.
------------------------------------------------------------- x

Plaintiffs, Kawan Food Manufacturing Sdn Bhd ("Kawan") and KG Pastry Marketing Sdn Bhd ("KG Pastry"), and defendants Bengal Sea Foods USA Canada Inc. ("Bengal"), Bhavani Fruits & Vegetables, Inc. and Bhavani Fruits & Vegetables, LLC, formerly Jai Bhavani Inc. (collectively, "Bhavani"), and Green-Lake Produce and Seafood Corporation ("Green Lake"), having settled this Civil Action on the record on November 9, 2006, as it relates to the claims between them, which compromise and settlement includes among its provisions the entry of injunctive relief, and the Court having found that plaintiffs and defendants have agreed to this Final Order and Permanent Injunction in form and content:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. This Court has jurisdiction of the subject matter of the claims asserted herein and the above-named parties to this action.

2. Plaintiff Kawan is the owner of United States Trademark Registration No. 3,127,305 for the trademark KAWAN in connection with food products (including a distinctive

logo ("Kawan Logo," *see* Exhibit A) and a composite trademark wherein KAWAN appears in red, stylized between two horizontal lines below the Kawan Logo ("Kawan & Logo Composite Mark," *see* Exhibit B) (collectively, the "KAWAN Marks")).

3. Each of the defendants, and the respective shareholders, directors, officers, members, managers, agents, employees, parent, subsidiary and affiliate entities of the defendants, and all other persons acting on behalf of, or in concert with, any of the defendants and who have notice of this injunction, are hereby permanently enjoined from using in any manner in connection with any food products manufactured, produced, imported, distributed, advertised, promoted, marketed, offered for sale and/or sold by defendants in the United States, and/or any other goods, business, and/or commercial activities of the defendants:

(a) any of the KAWAN Marks;

(b) any colorable imitation of any of the KAWAN Marks, including, but not limited to KOWLUN, and/or the logo and/or composite designations shown, respectively, in the attached Exhibits C and D (collectively, "KOWLUN Marks"); and/or

(c) the Kawan Packaging (*see* Exhibit E), or any packaging that is substantially similar to the Kawan Packaging, including, but not limited to, the Kowlun package shown in the attached Exhibit F (hereafter the "Kowlun Package");

4. Defendants have represented to the Court that as of November 9, 2006, they collectively had in inventory in their possession, a total of three thousand and four hundred (3,400) cases of product in the Kowlun Package. Each such case of product in the Kowlun Package contains twenty-four (24) packages, totaling eighty-one thousand six hundred (81,600) individual packages. Defendants also represent that they collectively have in inventory in their

possession, a total of one thousand six hundred cases of puri product in packaging bearing the Kowlun composite designation (the "Kowlun Puri Product"). Each such case of Kowlun Puri Product contains twenty-four (24) packages, totaling thirty-eight thousand four hundred (38,400) individual packages. Notwithstanding the provisions of paragraph 3 of this Order, above, defendants may sell-off the Kowlun Puri Product and product in the Kowlun Package as enumerated in this paragraph 4 (hereafter, collectively, "Current Inventory") until and including May 9, 2006, after which date the terms of paragraph 3 of this Order shall apply to any of defendants' Current Inventory remaining in the possession or control of any of the defendants. No products manufactured, produced, imported, received and/or purchased by any of the defendants after November 9, 2006 shall be considered to be part of defendants' Current Inventory subject to this limited, permitted sell-off, and in no event shall any of the defendants sell or distribute any of defendants' Current Inventory after May 9, 2007.

5. All remaining matters at issue between plaintiffs and defendants shall be, and hereby are, dismissed. Each party shall pay their own respective costs and attorneys' fees, except that within seven (7) days, Defendants shall make a one-time payment of ten thousand dollars ($10,000.00) towards plaintiffs' costs and attorneys' fees, for which the defendants shall be jointly and severally liable.

Dated: Brooklyn, New York
_____, 2007

                                              _____
                                              EDWARD R. KORMAN
                                              United States District Judge