**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X  **NOT FOR PUBLICATION**
KAWAN FOOD MANUFACTURING SDN BHD,

                           Plaintiff,

                - against -

BENGAL SEA FOODS USA CANADA, INC.,
GREEN-LAKE PRODUCE AND SEAFOOD,
CORP., YAKUB SHEIKH and HENRY UY,

                          Defendants.
------------------------------------------------------------X

**REPORT & RECOMMENDATION**

No. 06-CV-5430 (ERK) (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

INTRODUCTION

In a Memorandum and Order dated July 7, 2008, the Honorable Edward R. Korman ordered that plaintiff Kawan Food Manufacturing SDN BHD ("Kawan") receive attorneys' fees and costs to "deter any further violation of the permanent injunction" by Defendants. (*See* Docket Entry 75.) Kawan has submitted an accounting for its fees and costs in the amount of $80,618.82. (*See* Docket Entry 80.) Defendants argue that the amount sought is excessive and inadequately detailed. (*See* Docket Entry 82 at 4.) I have carefully reviewed both parties' briefs and declarations, and for the reasons specified below respectfully recommend that the Court award Kawan legal fees and costs in the amount of $60,426.31.

I.    Attorneys' Fees

In the Second Circuit, "[t]he lodestar method is ordinarily the starting point in determining the amount of fees that may be awarded." *Seitzman v. Sun Life Assurance Co. of Canada, Inc.*, 311 F.3d 477, 487 (2d Cir. 2002) (citation omitted). Under this method, attorneys' fees are calculated by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pugach v. M&T Morg. Corp.*, 564 F. Supp. 2d 153, 155

(E.D.N.Y. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (2d Cir. 1994) (emphasizing that a court's "choice of rates is well within [its] discretion"). *Cf. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (finding that the term "lodestar" should be replaced by the term "presumptively reasonable fee," but emphasizing a trial court's "considerable discretion" to consider all "case-specific variables" under an approach that is similar to the lodestar method).

In reviewing a fee application, a court examines the particular hours expended by counsel as well as the value of the work performed in resolving the client's case. *See Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994); *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985). In addition, any party seeking attorneys' fees "must document the application with contemporaneous time records" and submit them to the court. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). These time records "should specify, for each attorney, the date, the hours expended and the nature of the work." *Id*. at 1148. However, "[i]t is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of time expenditures." *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, at *2 (E.D.N.Y. June 13, 2005) (quoting *Perdue v. City Univ. of N.Y.*, 13 F. Supp. 2d 326, 345 (E.D.N.Y. 1998)).

A. <u>Reasonable Hourly Rate</u>

When calculating a reasonable award of attorneys' fees, the court must first establish a reasonable hourly rate, which is "what a reasonable, paying client would be willing to pay." *Trs. of United Teamster Fund v. J.B. Mufflers, Inc.*, No. 07-CV-1425, 2008 WL 2114955, at *4

(E.D.N.Y. May 19, 2008) (quoting *Arbor Hill*, 522 F.3d at 184). The court must consider the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974),[1] while also "bearing in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *Pugach*, 564 F. Supp. 2d at 155 (quoting *Arbor Hill*, 522 F.3d at 190). The party seeking attorneys' fees has the burden of proving that the hourly rates that it requests are similar to the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience and reputation." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)) (internal quotation marks omitted). The relevant "community" is where the district court sits. *See Arbor Hill*, 522 F.3d at 190. The determination of the prevailing market rates may either be based on evidence submitted to the court or upon the judge's own knowledge of hourly rates charged in the community. *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989) (citations omitted); *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). "Overall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants." *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (citations omitted); *see also Expeditors Int'l. of Washington, Inc. v. Rubie's Costume Co., Inc.*, No. 03-CV-3333, 2007 WL 430096, at *2 (E.D.N.Y. Feb. 2, 2007) ("Hourly

---

1 The twelve *Johnson* factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorneys' customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 522 F.3d at 186 n.3 (quoting *Johnson*, 488 F.2d at 717-19).

rates approved in recent Eastern District of New York cases have ranged from $200 to $375 for partners at law firms.").

In the instant case, Kawan's lead counsel, Ms. Gentner, has requested an hourly rate of $410.00 and her colleague, Philip L. O'Neill, has requested an hourly rate of $375.00. (*See* Docket Entry 80, Ex. A.) Ms. Gentner and Mr. O'Neill claim that their rates are reasonable for senior partners with over thirty years litigation experience in a Washington, D.C. law firm. (*See* Docket Entry 80 at 1.) In addition, they cite to the American Intellectual Property Law Association's ("AIPLA") 2007 Economic Survey which states that the average hourly rate for an IP partner in a Washington, D.C. law firm in 2006 was $435.00. *See* 2007 AIPLA Report of the Economic Survey, at I-30; (Docket Entry 80 at 3.) Kawan's local counsel, Mr. Hoffman, requests an hourly rate of $500.00, his associate Roger K. Marion, requests an hourly rate of $355.00, and Mr. Hoffman's paralegals (the "paralegals"), request an hourly rate of $150.00. (*See* Docket Entry 81, Ex. A.) Mr. Hoffman claims that his hourly rate is reasonable for a senior partner with over thirty years experience in a New York City law firm and that Mr. Marion's hourly rate is reasonable for a "specialist in civil business litigation with fifteen years' experience." (*See* Docket Entry 81 at 1.)

Defendants argue that the hourly rates for Kawan's counselors are excessive. (*See* Docket Entry 82 at 2.) First, Defendants argue that the hourly rates should match the prevailing rate in the Eastern District of New York, not Washington, D.C. or the Southern District of New York. *See Perez v. Siragusa*, No. 05-CV-4873, 2008 U.S. Dist. LEXIS 51593, at *21-22 (E.D.N.Y. June 30, 2008); (Docket Entry 82 at 6.) Second, Defendants argue that Mr. Hoffman should not be awarded an hourly rate that is greater than Ms. Gentner's since they performed

4

similar and often duplicative tasks.[2] (*See* Docket Entry 82 at 2.) I have considered all of the arguments and find that some of Kawan's requested hourly rates are appropriate while I find that others should be reduced.

    1.    <u>Lead Counselors</u>

"[T]he district court may adjust the base hourly rate to account for a plaintiff's reasonable decision to retain out-of district counsel." *Simmons v. New York Transit Authority*, No. 02-CV-1575, 2008 WL 630060, at *2 (E.D.N.Y. Mar. 5, 2008) (internal citations omitted). For example, it is reasonable to choose an out-of-district lawyer as lead counselor when particular expertise is required for a dispute. *Id.* (awarding prevailing rates from the Southern District of New York for a case brought in the Eastern District because the plaintiff was reasonable in choosing a lead counsel from the Southern District who had significant experience litigating disability discrimination cases before the Eastern District). Thus, "a district court may use an out-of-district hourly rate-or some rate in between the out-of-district rate sought and the rates charged by local attorneys- . . . if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill*, 522 F.3d at 111-12.

Here, Ms. Gentner is Kawan's lead counsel and has over thirty years experience litigating intellectual property disputes. (*See* Docket Entry 80 at 3.) Kawan has also presented evidence that the prevailing rate for partners specializing in intellectual property in Washington D.C. is $435.00 per hour. *Id.* Given the complexity of the underlying trademark dispute and how it

---

[2] Defendants also argue that Ms. Gentner's rate should not be higher than Mr. O'Neill since Mr. O'Neill has one more year of experience than Ms. Gentner. (*See* Docket Entry 82 at 6.) However, I agree with Kawan that attorneys charge different rates depending on their skills, the nature of the case and their expertise with the particular issues involved. (*See* Docket Entry 83 at 2.) Therefore, I find that it is reasonable that Ms. Gentner charges a higher hourly rate than Mr. O'Neill.

5

relates to Kawan's motion for contempt, I find that a reasonable, paying client would pay a premium for a lawyer with trademark expertise. *See A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, No. 96-CV- 9721, 1046705, at *2 (S.D.N.Y. May 23, 2002) (awarding a premium hourly rate for the added complexity of a trademark dispute) (citing *Toys "R" Us, Inc. v. Abir*, No. 97-CV-8673, 1999 WL 61817, at *2 (S.D.N.Y. Feb. 10, 1999)). Thus, I find that Ms. Gentner's hourly rate of $410.00 per hour is appropriate.[3] Similarly, Mr. O'Neill, is a litigation partner with over thirty years experience and he has requested an hourly rate that is within the prevailing rates for partners in the Eastern District. *See Expeditors Int'l.*, 2007 WL 430096, at *2. Thus, I recommend an hourly rate of $375.00 for Mr. O'Neill. However, with respect to Kawan's local counselors, I find that they have not established why the prevailing rates in the Eastern District should not apply.

      2.    Local Counselors

The primary purpose of local counsel is their expertise of the procedural rules in the prevailing district. *See Marler v. Amoco Oil Co., Inc.*, 793 F. Supp. 656, 659 (E.D.N.C. 1992) (holding that a large corporation with in-house counsel did not require local counsel, who are generally relied on for being "familiar with the local rules of procedure in the local district court, to read and correctly interpret the Federal Rules of Civil Procedure"). Thus, while it may be reasonable to hire an out-of-district lawyer as lead counsel it is rarely reasonable, absent extraordinary circumstances, to do so for local counsel.

---

3 Moreover, Washington D.C. is well-known as a home to lawyers that specialize in IP matters. Thus I find that a reasonable, paying client might look outside the Eastern District to Washington, D.C. for lead counsel with trademark expertise. *See Simmons*, 2008 WL 630060, at *2. I also note that Ms. Gentner's hourly rate of $410.00 is only slightly above the range of prevailing rates for partners in the Eastern District. *See Expeditors Int'l.*, 2007 WL 430096, at *2 ($200.00 to $375.00 prevailing hourly rate for partners in the Eastern District). Therefore, even if Ms. Gentner was from the Eastern District I would find that $410.00 per hour is reasonable given her intellectual property expertise.

In the instant case, there is no shortage of Eastern District lawyers familiar with the local rules of the Eastern District. Thus, I find that a reasonable, paying client, because they "wish[] to spend the minimum necessary to litigate the case effectively," *Pugach*, 564 F. Supp. 2d at 155, would have no reason to look outside the Eastern District for local counsel. Therefore, with respect to Kawan's local counselors, I find that their rates should be within the prevailing rates for the Eastern District. *See Speaks v. Kruse*, No. 04-CV-1952, 2006 WL 3388480, slip op. at *5 (E.D. La. Nov. 20, 2006) (reducing hourly rate for a local counsel because the "billing narrative revels that, as local counsel, he provided support and his knowledge of local procedure and customs to lead counsel . . . and consultation regarding legal and procedural issues").

With respect to Mr. Hoffman, his primary role was local counsel and there are no extraordinary circumstances that warrant a rate for his services other than a prevailing rate for the Eastern District. Thus, I recommend that Mr. Hoffman, as a partner, receive an hourly rate of $375.00. Similarly, Mr. Marion is a "counsel" with over fifteen years of litigation experience and thus his rate should be reduced to an appropriate level for a counsel. Because I am unaware of the prevailing rate for counsels in the Eastern District, I recommend that a counsel's rate should be set between the prevailing rates for senior associates and partners in the Eastern District. Thus, I recommend that Mr. Marion receive an hourly rate of $300.00. Finally, for the paralegals, I recommend a rate of $80.00 per hour, which is the prevailing rate for paralegals in the Eastern District. *See Cho*, 524 F. Supp. 2d at 207.

    B.    <u>Reasonable Hours Expended</u>

When calculating a presumptively reasonable fee award, the court must also evaluate the reasonableness of the hours expended on the specific case. *See Clarke v. Frank*, 960 F.2d 1146,

1153 (2d Cir. 1992) (citing *Hensley*, 461 U.S. at 427); *Wise v. Kelly*, No. 05-CV-5442, 2008 WL 482399, at *4 (E.D.N.Y. Feb. 21, 2008) (citations omitted). The party seeking the attorneys' fees bears the burden of establishing that the hours expended are reasonable. *Cruz*, 34 F.3d at 1160 (quoting *Hensley*, 461 U.S. at 437). If the court finds that any of the time spent is excessive, wasteful or unreasonable, the court may either reduce the hours for specific time-entries or make an across-the-board percentage cut. *See Hensley*, 461 U.S. at 434; *see also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'") (quoting *Carey*, 711 F.2d at 1146). "The district court is not required to set forth item-by-item findings concerning what may be countless objections to individual billing items." *Haley v. Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (internal citations omitted). Moreover, while "block billing is not prohibited in this Circuit," *Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999), a "substantial amount of block billing in . . . fee requests renders it difficult to determine whether, and/or the extent to which, the work done . . . is duplicative or unnecessary," *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 277 F. Supp. 2d 323, 325-26 (S.D.N.Y. 2003) (applying a 15% across-the-board percentage cut because of excessive and block billing).[4]

Kawan's counselors have requested 138.15 hours for Ms. Gentner, 10.25 hours for Mr. O'Neill, 26.56 hours for Mr. Hoffman, 2.3 hours for Mr. Marion, and 8.78 hours for the paralegals. (*See* Docket Entry 80, Ex. A; Docket Entry 81, Ex. A.) Defendants argue that

---

4 "Block billing is a form of time-keeping that involves stating the total daily time spent on a case, rather than separating out the time into individual entries describing specific activities." *Rodriguez*, 84 F. Supp. 2d at 425.

several of the hours expended by Kawan's counselors are excessive. (*See* Docket Entry 82 at 2.) I agree with Defendants.

First, Kawan's counselors claim that approximately 175 hours out of a total of 186 hours, or 94% of the work performed by them required the legal skills of partners with over thirty years of litigation experience. (*See* Docket Entry 80, Ex. A; Docket Entry 81, Ex. A.) However, I find that some of the tasks performed by Ms. Gentner, Mr. Hoffman and Mr. O'Neill did not require partner-level skills. (*See, e.g.*, attempt a telephone conference with clerk on 1/17/2008, receive a check on 8/6/2008, Docket Entry 80, Ex. A; exhibit issues on 1/31/2008, correspondence with court on 2/8/2008, calls from court reporter on 2/9/2008, transcript issues on 2/11/2008, calls to court on 2/13/2008, calls to court reporter and arrange for transcripts on 2/22/2008, Docket Entry 81, Ex. A.) Second, all of Kawan's time entries used block billing. (*See, e.g.*, entries for 1/30/2008, 2/8/2008, 2/12/2008, 2/13/2008, Docket Entry 80, Ex. A.; entries for 1/24/2008, 2/8/2008, 2/13/2008, Docket Entry 81, Ex. A.); *see also Alveranga v. Winston*, No. 04-CV-4356, 2007 WL 595069, at *5 (E.D.N.Y. Feb. 22, 2007) (holding that a reduction in hours is appropriate where "entries in plaintiff's fee application combine tasks in a way that makes it difficult for the Court to assess whether the time logged was reasonable"). Further, the time records submitted by Kawan's counselors do not indicate how many hours they spent traveling to the Court for various conferences. (*See* Docket Entry 80, Ex. A.) In this Circuit, courts usually reduce attorneys' fees by 50% for travel time because "the time spent by attorneys in transit may be beneficial, but it probably is not as productive as time at the office or in court." *Jennette v. City of New York*, 800 F. Supp. 1165, 1170 (S.D.N.Y. 1992) (quoting *Soc'y for Good Will to Retarded Children, Inc. v. Cuomo*, 574 F. Supp. 994, 998 (E.D.N.Y. 1983), *vacated on other grounds*, 737 F.2d 1253 (2d Cir. 1984)); *see also Tlacoapa v. Carregal*,

386 F. Supp. 2d 362, 373 (S.D.N.Y. 2005) (citations omitted); *Wise*, 2008 WL 482399, at *14 (citations omitted).

Thus, I find that several of the tasks performed by Kawan's counselors did not require partner-level skills and should therefore be reduced. Furthermore, Ms. Gentner and Mr. O'Neill have not specified how much time was spent in traveling from Washington, D.C. to the Eastern District of New York. (*See* Docket Entry 80, Ex. B.) Because Kawan's counselors used block billing, however, I am unable to distinguish the time spent on individual tasks. Therefore, I recommend an across-the-board cut of 20% for the hours expended by Kawan's counselors. *See Molefi v. Oppenheimer Trust*, No. 03-CV-5631, 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007) (applying a 15% across-the-board reduction); *Ass'n of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt AG*, No. 04-CV-3600, 2005 WL 3099592, at *5 & n. 9 (S.D.N.Y. Nov.17, 2005) (applying a 25% across-the-board reduction).

A 20% across-the-board cut in hours for Kawan results in the following reductions: Ms. Gentner from 138.15 to 110.52, Mr. O'Neill from 10.25 to 8.20, Mr. Hoffman from 26.56 to 21.25, Mr. Marion from 2.30 to 1.84, and Mr. Hoffman's paralegals from 7.78 to 6.22.

In sum, I recommend that Kawan receive $57,406.55 in attorneys' fees as summarized by the following table:

| Attorney | Hourly Rate | Reasonable Hours | Total |
| --- | --- | --- | --- |
| Ms. Gentner | $410.00 | 110.52 | $45,313.20 |
| Mr. O'Neill | $375.00 | 8.20 | $3,075.00 |
| Mr. Hoffman | $375.00 | 21.25 | $7,968.75 |
| Mr. Marion | $300.00 | 1.84 | $552.00 |
| Paralegals | $80.00 | 6.22 | $497.60 |
| **Total** | - | **148.03** | **$57,406.55** |

II. Costs

Kawan requests $1,350.61 in taxable costs plus $1,669.15 in non-taxable costs. (*See* Docket Entry 80 at 5, Ex. B; Docket Entry 81 at "Bill of Costs", Ex. B.) I find that such costs are reasonable and recommend that Kawan receive $3,019.76 in costs. *See Leyse v. Corp. Collection Servs., Inc.*, 545 F. Supp. 2d 334, 339 (S.D.N.Y. 2008).

CONCLUSION

For the reasons set forth above, I recommend that Defendants pay $60,426.31 to Kawan, comprising $48,388.20 in reasonable fees to Ms. Gentner's firm and $9,018.35 to Mr. Hoffman's firm, and $3,019.76 in taxable and non-taxable costs to be shared by both firms.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Chambers of the Honorable Edward R. Korman within ten business days of receiving this Report and Recommendation. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6, 72; *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: December, 1, 2008**
   **Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**